# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

RANDY JOHNSON, on behalf of himself and others similarly situated,

        Plaintiff,

v.

NAVIENT SOLUTIONS, INC, formerly known as SALLIE MAE, INC., now known as NAVIENT SOLUTIONS, LLC,

        Defendant.

-------------------------------------------------------

SHELLY TOURE and TONY HEARD, on behalf of themselves and others similarly situated,

 Plaintiffs,

v.

NAVIENT SOLUTIONS, INC, formerly known as SALLIE MAE, INC., now known as NAVIENT SOLUTIONS, LLC,

        Defendant.

Case No.: 1:15-cv-0716-LJM-MJD

Case No. 1:17-cv-00071 LJM-TAB

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# Table of Contents

Introduction.................................................................................................................... 1

Summary of the Settlement............................................................................................. 1

Class Administration....................................................................................................... 2

Argument ........................................................................................................................ 4

I.   This Court should finally approve the settlement. ................................................. 4

A.   The strengths of Plaintiffs' case, compared to the value of the settlement, weighs in favor of final approval. ...................................................................... 5

1.   Many risks accompany continued litigation. ............................................... 5

2.   The value of the settlement is quite significant. .......................................... 8

3.   Balancing the risks and costs that accompany continued litigation with the significant value of the settlement supports final approval. ................................. 9

B.   That this matter is complex, and would not likely have concluded for years, weighs in favor of final approval. ..................................................................... 11

C.   The nearly universal favorable reaction to the settlement, as well as the lack of any objection to it, supports final approval. ................................................. 11

D.   That class counsel strongly believe the settlement is fair, reasonable, and adequate, weighs in favor of final approval........................................................ 12

E.   The advanced stage of the proceedings at which the parties reached an agreement to resolve this matter—after the close of discovery and with dueling summary judgment motions pending—weighs in favor of final approval. ......................... 13

II.   Distribution of notice satisfied due process requirements. ................................. 14

Conclusion .................................................................................................................... 15

**Table of Authorities**

**Cases**

*Adams v. AllianceOne Receivables Mgmt. Inc.*,
    No. 08-cv-00248, ECF No. 113 (S.D. Cal. Apr. 23, 2012)…………………..…………….8

*Aranda v. Caribbean Cruise Line, Inc.*,
    No. 12 C 4069, 2017 WL 818854 (N.D. Ill. Mar. 2, 2017)……………………………..8

*Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*,
    616 F.2d 305 (7th Cir. 1980)……………………………………………….………..13

*Arthur v. SLM Corp.*,
    No. C10–0198 JLR, ECF No. 249 (W.D. Wash. Aug. 8, 2012)……………..……………15

*Bayat v. Bank of the W.*,
    No. C-13-2376 EMC, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015)……………………14

*Bennett v. Behring Corp.*,
    96 F.R.D. 343 (S.D. Fla. 1982)………………………..……………………………………10

*Burns v. Elrod*,
    757 F.2d 151 (7th Cir. 1985)………………………….………………………………..14

*Campbell-Ewald Co. v. Gomez*,
    136 S. Ct. 663 (2016)…………………………………………..……………………..6

*Connor v. JPMorgan Chase Bank*,
    No. 10 CV1284, ECF No. 113 (S.D. Cal. May 30, 2014)…………………..……………8

*Cross v. Wells Fargo Bank, N.A.*,
    No. 2:15-cv-01270-RWS, 2016 WL 5109533 (N.D. Ga. Sept. 13, 2016)…………………8

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)………………………………………………………..13

*Donovan v. Estate of Fitzsimmons*,
    778 F.2d 298 (7th Cir. 1985)…………………………………………….……………5

*Florence Endocrine Clinic, PLLC v. Arriva Med., LLC*,
    No. 16-17483, 2017 WL 2415966 (11th Cir. June 5, 2017)……..…………………….7

*Fontana v. Elrod*,
    No. 85 C 2424, 1986 WL 5193 (N.D. Ill. Apr. 28, 1986)……..…………………………14

*Gehrich v. Chase Bank USA, N.A.*,
  316 F.R.D. 215 (N.D. Ill. 2016)…………………………………………...…………………….8

*Grady v. de Ville Motor Hotel, Inc.*,
  415 F.2d 449 (10th Cir. 1969)……………………………………………………………….10

*Grannan v. Alliant Law Grp., P.C.*,
  No. C10-02803 HRL, 2012 WL 216522 (N.D. Cal. Jan. 24, 2012)………………………15

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)………………………………………………………………10

*Henry v. Sears Roebuck & Co.*,
  No. 98-CV-4110, 1999 WL 33496080 (N.D. Ill. July 23, 1999)………….………………12

*In re AT & T Mobility Wireless Data Servs. Sales Litig.*,
  270 F.R.D. 330 (N.D. Ill. 2010)……………………………………….…………………….4

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*,
  789 F. Supp. 2d 935 (N.D. Ill. 2011)……………………………….………………………12

*In re Capital One Tel. Consumer Protection Act Litig.*,
  80 F. Supp. 3d 781 (N.D. Ill. 2015)……………………………….………………………8, 10

*In re Carrier IQ, Inc. Consumer Privacy Litig.*,
  No. 12-md-02330-EMC, 2016 WL 4474366 (N.D. Cal. Aug. 25, 2016)………………….2

*In re Domestic Air Transp. Antitrust Litig.*,
  148 F.R.D. 297 (N.D. Ga. 1993)……………………………………………………………10

*In re Mexico Money Transfer Litig.*,
  164 F. Supp. 2d 1002 (N.D. Ill. 2000)……………………………………………………12

*In re TRS Recovery Servs., Inc. & Telecheck Servs., Inc., Fair Debt Collection Practices Act (FDCPA) Litig.*,
  No. 2:13-MD-2426-DBH, 2016 WL 543137 (D. Me. Feb. 10, 2016)…………..…………2

*In re Yahoo Mail Litig.*,
  Nos. 13-CV-4980-LHK, 13-CV-4989-LHK, 13-CV-5326-LHK,
  13-CV-5388-LHK, 2016 WL 4474612 (N.D. Cal. Aug. 25, 2016)……..………………2

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996)………………………………………...…………5, 10, 12, 13

*Johnson v. Brennan*,
  No. 10–cv–4712–CM, 2011 WL 1872405 (S.D.N.Y. May 17, 2011)………..…………13

*Juris v. Inamed Corp.*,
    685 F.3d 1294 (11th Cir. 2012)………………………………………...…………14

*Kolinek v. Walgreen Co.*,
    311 F.R.D. 483 (N.D. Ill. 2015)…………………………………….…………15

*Larson v. Trader Joe's Co.*,
    No. 11-cv-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014)………….……..2

*Malta v. Fed. Home Loan Mortg. Corp.*,
    No. 10-cv-1290, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013)……………………………8, 9

*Markos v. Wells Fargo Bank, N.A.*,
    No. 1:15-cv-01156-LMM, 2016 WL 4708028 (N.D. Ga. Sept. 7, 2016)…………………8

*Markos v. Wells Fargo Bank, N.A.*,
    No. 1:15-cv-01156-LMM, 2017 WL 416425 (N.D. Ga. Jan. 30, 2017)……………………9

*Mars Steel Corp. v. Cont'l Ill. Nat. Bank & Trust Co. of Chi.*,
    834 F.2d 677 (7th Cir. 1987)……………………………………….…………..13

*Michel v. WM Healthcare Solutions, Inc.*,
    No. 1:10-CV-638, 2014 WL 497031 (S.D. Ohio Feb. 7, 2014)……………………15

*Oppenlander v. Standard Oil Co. (Ind.)*,
    64 F.R.D. 597 (D. Colo. 1974)……………………………………………………11

*Palm Beach Golf Center-Boca, Inc. v. Sarris*,
    311 F.R.D. 688 (S.D. Fla. 2015)……………………………….…………………9

*Picchi v. World Fin. Network Bank*,
    No. 11-CV-61797-CIV-Altonaga/O'Sullivan (S.D. Fla.)……………….……………8

*Rose v. Bank of Am., N.A.*,
    No. 5:12-cv-04009, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014)………….…………8

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011)……………………………...………………11

*Shepherd's Mktg., Inc. v. Ministers Life*,
    No. 90-1328, 1992 WL 78776 (C.D. Ill. Mar. 3, 1992)…………….…………………6

*Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*,
    279 F.R.D. 442 (N.D. Ohio 2012)…………………………...………………………9

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016)……………………………………...………………………...6

*St. Louis Heart Ctr., Inc. v. Vein Ctrs. for Excellence, Inc.*,
No. 12-174, 2013 WL 6498245 (E.D. Mo. Dec. 11, 2013)……………..………………9

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
463 F.3d 646 (7th Cir. 2006)……………………….………………………………………5

*Van Patten v. Vertical Fitness Grp., LLC*,
847 F.3d 1037 (9th Cir. 2017)……………………...…………………………………………7

*Vought v. Bank of Am., N.A.*,
901 F. Supp. 2d 1071 (C.D. Ill. 2012)……………………………………………………11

*Wilkins v. HSBC Bank Nev., N.A.*,
No. 14-190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015)………………………………8, 15

**Regulations**

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
30 F.C.C.R. 7961, 30 FCC Rcd. 7961……………………..………………………………8

**Secondary Materials**

2 McLaughlin on Class Actions, § 6:7 (8th ed. 2011)…………….………………………13

4 Newberg on Class Actions § 11:50 (4th ed. 2010)……………...………………………10

**Introduction**

The settlement—which the parties to these related class actions reached only after protracted and expensive litigation, after this Court certified a class, after the Seventh Circuit denied Defendant's petition for interlocutory review under Federal Rule of Civil Procedure 23(f), after the close of discovery, and after a series of contentious, arm's-length negotiations with the assistance of a seasoned mediator—requires Defendant to establish an all-cash, non-reversionary settlement fund in the amount of $19,744,650. Upon receiving notice of the settlement, 24,834 class members submitted valid claims for their *pro rata* share of the settlement fund. After deducting from the settlement fund all notice and administration costs, litigation costs and expenses, attorneys' fees, and incentive awards—which are subject to this Court's approval and are addressed in a separate motion—each claimant will receive approximately $515.[1] Moreover, only 13 class members excluded themselves from the settlement, and not a single class member submitted an objection. Given this excellent result, and considering the overwhelmingly favorable support for the settlement from the class members, Plaintiffs respectfully request that this Court finally approve the settlement, and enter a final judgment and order.

**Summary of the Settlement**

The settlement agreement requires that Defendant pay $17,500,000 to compensate the class, "except that, if the number of persons in the Settlement Class exceeds 350,000 by more than 10% (i.e., 35,000 persons), NSI will add fifty dollars ($50) to the Fund for each person in excess of 385,000." *Johnson v. Navient Solutions, LLC.*, Case No.: 1:15-cv-0716-LJM-MJD, ECF No.

---

[1]     This figure assumes an award of the requested litigation costs and expenses, attorneys' fees, and incentive awards. It may increase slightly if the Court-appointed settlement administrator, Rust Consulting, Inc. ("Rust"), identifies additional duplicate or fraudulent claims, and it may decrease slightly if this Court permits additional late-filed claims.

156-1 at 15, ¶ 13 (S.D. Ind.) ("*Johnson*"). During the administration process Defendant identified 429,893 class members. As a result, Defendant must establish a non-reversionary settlement fund in the amount of $19,744,650. The settlement fund will be divided *pro rata* amongst valid claimants after deducting notice and administration costs, litigation costs and expenses, attorneys' fees, and incentive awards.

**Class Administration**

Following the date on which this Court entered its order preliminarily approving the settlement, *Johnson*, ECF No. 161, Rust delivered notice to the class members at a cost capped at $442,202. The resulting healthy claims rate, very small number of exclusions, and lack of any objection,[2] demonstrate not only the effectiveness of the notice, but also the class members' satisfaction with the settlement.

---

[2]     While no class member objected to any aspect of the settlement, one person—Patrick Sweeney—initially did so despite that he is not a member of the class. *Johnson*, ECF No. 168; *Toure, et, al., v. Navient Solutions, Inc.*, Case No. 1:17-cv-00071 LJM-TAB, ECF No. 41 (S.D. Ind.) ("*Toure*"). Of note, this is not the first time Mr. Sweeney has inserted himself into a class settlement of which he is not a part. *See, e.g.*, *In re Yahoo Mail Litig.*, Nos. 13-CV-4980-LHK, 13-CV-4989-LHK, 13-CV-5326-LHK, 13-CV-5388-LHK, 2016 WL 4474612, at *8 (N.D. Cal. Aug. 25, 2016); *In re TRS Recovery Servs., Inc. & Telecheck Servs., Inc., Fair Debt Collection Practices Act (FDCPA) Litig.*, No. 2:13-MD-2426-DBH, 2016 WL 543137, *6 n.16 (D. Me. Feb. 10, 2016). Indeed, Mr. Sweeney—a professional objector and Wisconsin attorney under criminal indictment for fraud—has lodged unmeritorious objections to dozens of class action settlements in the past few years, drawing the ire of courts across the country. *See In re Yahoo Mail Litig.*, 2016 WL 4474612, at *8; *see also, e.g.*, *Larson v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531, *7 n.4 (N.D. Cal. July 11, 2014); *In re Carrier IQ, Inc. Consumer Privacy Litig.*, No. 12-md-02330-EMC, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016). Pertinent here, Mr. Sweeney proffered six telephone numbers he claimed could be on the class list. None are. Moreover, Mr. Sweeney's name is not associated with any known class member. But to his credit, when confronted with uncontroverted evidence that he is not a class member, Mr. Sweeney ultimately agreed to withdraw his objection with prejudice. *Johnson*, ECF No. 169; *Toure*, ECF No. 42. This Court then ordered Mr. Sweeney's objection withdrawn on June 16, 2017. *Johnson*, ECF No. 170; *Toure*, ECF No. 43. Notwithstanding, Mr. Sweeney's objections lack merit for the reasons set forth below, and in Plaintiffs' memorandum in support of their motion for attorneys' fees, costs, expenses, and incentive awards. *Johnson*, ECF No. 167; *Toure*, ECF No. 40.

*Direct Mail Notice*: Rust caused 394,991 postcards, which include notice of the settlement, to be mailed to the class members. *Johnson*, ECF No. 173-1, ¶¶ 5-6. Rust re-mailed any notices returned undeliverable to forwarding addresses, where undeliverable postcards were returned with a forwarding address. *Id.*, ¶¶ 6-8. For undeliverable postcards returned without a forwarding address, Rust performed advanced address searches to locate updated addresses, and re-mailed postcards to any updated addresses obtained. *Id.* Based on the number of postcards mailed and ultimately not returned as of June 19, 2017, approximately 89% of the class members received direct mail notice of the settlement. *Id.*, ¶ 8.

*Publication Notice*: To supplement the already robust direct mail notice program, Rust published notice of the settlement in two separate national editions of USA Today, with a circulation of 975,139, on March 28, 2017 and March 29, 2017. *Id.*, ¶ 9. Rust also published notice of the settlement in one national edition of the U.S. Wall Street Journal, with a circulation of 1,321,827, on March 29, 2017. *Id.*

*Settlement Website*: Rust established and maintains a website dedicated to the settlement—www.johnsontcpasettlement.com—which includes information pertinent to class members as well as answers to frequently asked questions. *Id.*, ¶ 4(b). Class members were able to file claims via the settlement website. *Id.* As of June 19, 2017, the website received 98,742 page visits. *Id.*

*Toll-Free Hotline*: Rust established and maintains a toll-free telephone number—(877) 740-6998—for class members to obtain information about the settlement. *Id.*, ¶ 4(d) The toll-free telephone number received 2,143 calls as of June 19, 2017. *Id.*

---

Separately, the submission of Benjamin Fickel, *see Johnson*, ECF No. 165, which is improperly docketed as an objection to the settlement, is not an objection at all. And in any event, because there exists no evidence that Mr. Fickel is a class member, he, like Mr. Sweeney, lacks standing to object to the settlement.

*Claims*: 24,834 class members submitted valid claims. *Id*., ¶ 13.[3]

*Exclusions*: 13 class members—or approximately .003% of the class—excluded themselves from the settlement. *Id*., ¶ 10.[4]

*Objections*: Not a single class member objected to the settlement. *Id*.

*Class Action Fairness Act Notice*: Defendant served the notice required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715. No government official, state or federal, objected to or raised an issue regarding the settlement.

## Argument

### I.  This Court should finally approve the settlement.

Rule 23(e) "requires court approval of any settlement that effects the dismissal of a class action. Before such a settlement may be approved, the district court must determine that a class action settlement is fair, adequate, and reasonable, and not a product of collusion." *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010). "In order to evaluate the fairness of a settlement, a district court must consider the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (internal quotation omitted). "Consistent with this approach, [courts] do not focus on individual components of the settlements, but rather view them in their

---

[3]     Of these 24,834 claims, 207 were filed late, but are otherwise valid. Plaintiffs and Defendant have agreed to accept these late-filed claims.

[4]     An additional 56 persons submitted exclusion requests, likely in an abundance of caution, who are not class members. Because these persons are not class members, they are not bound by the judgment in this case.

entirely in evaluating their fairness." *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996) (internal quotation omitted).

    **A.  The strengths of Plaintiffs' case, compared to the value of the settlement, weighs in favor of final approval.**

        **1.  Many risks accompany continued litigation.**

"[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985), *on reh'g sub nom. Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682 (7th Cir. 1986). Here, significant risks accompany continued litigation.

First, pending before this Court at the time the parties reached an agreement to resolve this matter were cross-motions for summary judgment. And through related briefing, Defendant outlined several noteworthy arguments in support of its request for judgment.

For example, Defendant argued that Plaintiffs' TCPA claims fail because the Federal Communications Commission ("FCC") recently clarified that agents of the federal government are not liable for violations of the TCPA stemming from autodialed calls placed on its behalf. *See Johnson*, ECF No. 142 at 24-30. That is, Defendant suggested that because it made the subject calls on behalf of the federal government, and because Defendant is an agent of the federal government, Defendant is immune from liability resulting from the calls at issue. Consequently, despite that Defendant's argument rests on the veracity of its self-characterization as an agent of the federal government, it necessarily has teeth given that agency is generally an issue of fact reserved for trial. *See Shepherd's Mktg., Inc. v. Ministers Life*, No. 90-1328, 1992 WL 78776, at *2 (C.D. Ill. Mar. 3, 1992).

As well, Defendant argued that its individual offer of judgment to Randy Johnson mooted his case, and that this Court should consequently dismiss Mr. Johnson's claims for lack of subject

matter jurisdiction. *See generally Johnson*, ECF No. 138. Specifically, Defendant suggested that

because it tendered to Mr. Johnson a check for "the full value of his claims," it provided him "with

more than he could hope to recover in this litigation on an individual basis," and that Mr. Johnson's

action was accordingly moot. *See id*. at 4-5. Defendant buttressed its argument with a reference to

a dissenting opinion in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), *as revised* (Feb. 9,

2016), which suggests "that a plaintiff's claim is moot once he has 'received full redress' from the

defendant for the injuries he has asserted." *Johnson*, ECF No. 138 at 5-6. And considering the

current makeup of the Supreme Court, the dissenting opinion in *Campbell-Ewald Co.* could soon

become a majority position. This, therefore, is a significant risk Plaintiffs face in connection with

continued litigation.

Moreover, Defendant suggested that Mr. Johnson failed to establish Article III standing

under *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). *See Johnson*, ECF No. 142 at 21-24. In

support of its position, Defendant cited three decisions from district courts outside the Seventh

Circuit. *Id*. at 22. And although this Court previously rejected Defendant's argument, *see id*., No.

43 at 1, it is, as evidenced by the decisions Defendant cited, one that has a following. As such, and

since no circuit court of appeals had addressed Defendant's standing-based contention in the

context of the TCPA at the time the parties filed their notice of settlement, Defendant's argument

posed a real risk to Plaintiffs.[5]

---

[5]     Approximately two and a half months after the parties filed their notice of settlement, *see
Johnson*, ECF No. 151 (Nov. 15, 2016), and just over a month after Plaintiffs filed their unopposed
motion for preliminary approval of the parties' class action settlement, *see id.,* No. 155 (Dec. 23,
2016), the Ninth Circuit held that a violation of the substantive right conferred by the TCPA to be
free from certain types of calls absent consent gives rise to Article III standing. *Van Patten v.
Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017); *accord Florence Endocrine
Clinic, PLLC v. Arriva Med., LLC*, No. 16-17483, 2017 WL 2415966, at *2 (11th Cir. June 5,
2017) ("in the context of the [TCPA], the plaintiff suffers a concrete injury because the plaintiff's

Second, in addition to Defendant's summary judgment arguments, *see generally id*., ECF Nos. 138, 142, Defendant repeatedly stated that it would move to decertify the class. *See, e.g.*, *id*., ECF No. 126 at 6. And Defendant's threat was not empty. In fact, on top of its voluminous briefing regarding class certification, *see id*., ECF Nos. 100-106; 109, and its lengthy petition for permission to appeal this Court's order certifying a class, *see id*., ECF No. 130, Defendant not only raised its position regarding de-certification through its response to Plaintiffs' motion for summary judgment, *see id*., ECF No. 141 at 15-17, but also attached hundreds of pages of exhibits and declarations to bolster it. *See id*., ECF No. 141-1–142-13. Noteworthy, Defendant's argument regarding de-certification rests heavily on its critique of Plaintiffs' expert's testimony, which this Court did not consider in reaching its decision to certify the class. *See id*., ECF No. 122 at 4 n.1. Correspondingly, Defendant's argument regarding de-certification constitutes a significant risk Plaintiffs would have to overcome if litigation continued.

Third, Defendant argued that even if Plaintiffs did obtain a judgment against it, the related potential statutory damage award would violate Defendant's due process rights, and the aggregate damage award to the class would be unconstitutional. *See id*., ECF No. 142 at 34-36. This, viewed against the changing legal landscape in which Plaintiffs litigated this matter, *see, e.g.*, *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C.R. 7961, 30 FCC Rcd. 7961, *pet. for rev. pending*, *ACC Int'l v. FCC*, No. 15-1211 (D.C. Cir.), stood as an obstacle to Plaintiffs' ultimate success. Simply, even if Plaintiffs successfully jumped over every merit-based, subject matter jurisdiction-based, and standing-based hurdle in their way, they could not be certain of the eventual damage award available to the class.

---

fax machine is occupied while the unsolicited fax is being sent and the plaintiff must shoulder the cost of printing the unsolicited fax").

**2.   The value of the settlement is quite significant.**

Notwithstanding the various risks that accompany continued litigation, the value of the settlement compares very favorably, on a per-class member basis (approximately $19.74 million for 429,893 class members, or approximately $46 per class member), to similar TCPA class action settlements that courts have recently approved. *See, e.g., Aranda v. Caribbean Cruise Line, Inc.*, No. 12 C 4069, 2017 WL 818854, at *2 (N.D. Ill. Mar. 2, 2017) ($56-$76 million for approximately 1 million class members); *Cross v. Wells Fargo Bank, N.A.*, No. 2:15-cv-01270-RWS, 2016 WL 5109533 (N.D. Ga. Sept. 13, 2016) ($4.75 per class member); *Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, 2016 WL 4708028 (N.D. Ga. Sept. 7, 2016) ($4.95 per class member); *Picchi v. World Fin. Network Bank*, No. 11-CV-61797-CIV-Altonaga/O'Sullivan, ECF No. 151 (S.D. Fla. May 14, 2015) ($2.63 per class member); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215 (N.D. Ill. 2016) (approximately $1 per class member); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015) ($4.41 per class member); *In re Capital One Tel. Consumer Protection Act Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) ($4.53 per class member); *Rose v. Bank of Am., N.A.*, No. 5:12-cv-04009, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) ($4.15 per class member); *Connor v. JPMorgan Chase Bank*, No. 10 CV1284, ECF No. 113 (S.D. Cal. May 30, 2014) ($4.34 per class member); *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-cv-1290, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013) ($2.90 per class member); *Adams v. AllianceOne Receivables Mgmt. Inc.*, No. 08-cv-00248, ECF No. 113 (S.D. Cal. Apr. 23, 2012) ($1.48 per class member). In short, while the unadjusted per-class member recovery in many recently approved TCPA class action settlements amounts to a handful of dollars or less, the per-class member recovery here amounts to about $46.

Furthermore, the settlement provides each claimant roughly $515, despite the purely statutory damages at issue, which courts have deemed too small to incentivize individual actions. *See, e.g.*, *Palm Beach Golf Center-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 699 (S.D. Fla. 2015) (noting that the small potential recovery in individual TCPA actions reduced the likelihood that class members will bring suit); *St. Louis Heart Ctr., Inc. v. Vein Ctrs. for Excellence, Inc.*, No. 12-174, 2013 WL 6498245, at *11 (E.D. Mo. Dec. 11, 2013) (explaining that because the statutory damages available to each individual class member are small, it is unlikely that the class members have interest in individually controlling the prosecution of separate actions); *Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442, 446 (N.D. Ohio 2012) (stating that, since each class member is unlikely to recover more than a small amount, they are unlikely to bring individual suits under the TCPA). This means that each claimant will receive hundreds of dollars they otherwise would likely never have pursued on their own.

Also noteworthy, the $515 per-claimant recovery here is more than 21 times greater than that in *Markos*—an analogous TCPA class action—in which the court characterized the $24 per-claimant recovery as "an excellent result." *See* 2017 WL 416425, at *4.

### 3. Balancing the risks and costs that accompany continued litigation with the significant value of the settlement supports final approval.

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." 4 Newberg on Class Actions § 11:50 (4th ed. 2010); *accord Isby*, 75 F.3d at 1196 ("Federal courts naturally favor the settlement of class action litigation."). This is, in part, because "the law should favor the settlement of controversies, and should not discourage settlement by subjecting a person who has compromised a claim to the hazard of having the settlement proved in a subsequent trial . . . ." *Grady v. de Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969). It is also, in part, because

9

"[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993) ("In assessing the settlement, the Court must determine whether it falls within the range of reasonableness, not whether it is the most favorable possible result in the litigation.") (internal citation omitted).

Here, consideration of various risks that accompany continued litigation, *see supra*, Argument, Section I.A.1, against the backdrop of the significant value of the settlement, *see id.*, Section I.A.2, weighs in favor of final approval. *Accord In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d at 790 ("[A] settlement is a compromise, and courts need not—and indeed should not—reject a settlement solely because it does not provide a complete victory to plaintiffs.") (internal quotation omitted), *appeal dismissed* (May 5, 2015), *appeal dismissed* (June 8, 2015), *appeal dismissed* (June 26, 2015); *Bennett v. Behring Corp.*, 96 F.R.D. 343, 349 (S.D. Fla. 1982) (noting that the plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for the plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial"), *aff'd*, 737 F.2d 982 (11th Cir. 1984); *Oppenlander v. Standard Oil Co. (Ind.)*, 64 F.R.D. 597, 624 (D. Colo. 1974) ("[T]he Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, 'It has been held proper 'to take the bird in the hand instead of a prospective flock in the bush.'").

**B.  That this matter is complex, and would not likely have concluded for years, weighs in favor of final approval.**

This matter involved a variety of complex legal questions, most of which were difficult, and several of which were novel. From the outset, the merit-based, subject matter jurisdiction-based, and standing-based arguments that Defendant raised, *see supra*, Argument, Section I.A.1, involved difficult and unsettled legal questions, which are at the forefront of class action, constitutional, and consumer protection law.

As well, it is highly unlikely that this matter would have concluded, absent settlement, in the near future. Indeed, Defendant not only suggested, but demonstrated, that it intended to fight both liability and damage-related issues through summary judgment, trial, and appeal. *See id*.

In addition, the costs and expenses associated with continued litigation would have been high. *Accord Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("The costs associated with discovery in complex class actions can be significant.").

Thus, the complex issues encompassed by this action, together with the length of time and expense likely necessary to resolve this case through continued litigation, weigh in favor of final approval. *See Vought v. Bank of Am., N.A.*, 901 F. Supp. 2d 1071, 1092 (C.D. Ill. 2012) ("Overall, the significant complexity of the issues this case presents, the increased length of time that would be necessary to resolve this case by continued litigation, and the corresponding dramatic increase in costs weigh in favor of approving the proposed settlement.").

**C.  The nearly universal favorable reaction to the settlement, as well as the lack of any objection to it, supports final approval.**

As a result of the notice that Rust distributed, 24,834 class members submitted valid claims, 13 excluded themselves from the settlement, and not one objected to it. This overwhelmingly favorable reaction to the settlement supports final approval. *See In re AT & T Mobility Wireless*

*Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 965 (N.D. Ill. 2011) ("Class Members have filed only 10 objections with specific arguments. . . . Such a remarkably low level of opposition supports the Settlement."); *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1021 (N.D. Ill. 2000) (holding that the fact that more than "99.9% of class members have neither opted out nor filed objections . . . is strong circumstantial evidence in favor of the settlement"), *aff'd*, 267 F.3d 743 (7th Cir. 2001); *Henry v. Sears Roebuck & Co.*, No. 98-CV-4110, 1999 WL 33496080, at *11 (N.D. Ill. July 23, 1999) ("The extremely small number of objections—approximately .0002% of Class members—weighs in favor of Court approval.").

**D. That class counsel strongly believe the settlement is fair, reasonable, and adequate, weighs in favor of final approval.**

Courts are "entitled to rely heavily on the opinion of competent counsel." *See Isby*, 75 F.3d at 1200 (internal quotation omitted). Here, class counsel—whose qualifications include substantial experience with TCPA class actions, *see Johnson*, ECF No. 167-1, ¶¶ 9-17—believe the settlement is fair, reasonable, and adequate, and in the best interests of the members of the class. Class counsel additionally believe that the benefits of the settlement far outweigh the delay and considerable risk of proceeding to trial. *Id.*, ECF No. 156-1, ¶ 37.

Of note, class counsel's opinion here is particularly meaningful given the lengthy procedural history underlying this matter, *see id.*, ECF No. 167-1, ¶¶ 40-55, and that there was no collusion in the negotiation process. *Accord Isby*, 75 F.3d at 1200 ("Further, there is no indication that the Proposed Settlement Agreement is the victim of collusion."). This is evidenced, if by nothing more, than that the parties mediated this case three times—once before Magistrate Judge Dinsmore, and twice before the Hon. William Cahill (Ret.) of JAMS, *see id.*, ¶ 37—before reaching an agreement to resolve it. *See* 2 McLaughlin on Class Actions, § 6:7 (8th ed. 2011) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the

12

absence of collusion."); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] mediator[ ] . . . helps to ensure that the proceedings were free of collusion and undue pressure."); *Johnson v. Brennan*, No. 10–cv–4712–CM, 2011 WL 1872405, at *1 (S.D.N.Y. May 17, 2011) (The participation of an experienced mediator "reinforces that the Settlement Agreement is non-collusive.").

### E. The advanced stage of the proceedings at which the parties reached an agreement to resolve this matter—after the close of discovery and with dueling summary judgment motions pending—weighs in favor of final approval.

"The stage of the proceedings at which settlement is reached is important because it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 325 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). For instance, "[t]he danger of a premature, even a collusive, settlement is increased when . . . the status of the action as a class action is not determined until a settlement has been negotiated, with all the momentum that a settlement agreement generates[.]" *Mars Steel Corp. v. Cont'l Ill. Nat. Bank & Trust Co. of Chi.*, 834 F.2d 677, 680 (7th Cir. 1987).

Here, the parties did not reach an agreement to resolve this matter until after this Court certified a class, and after the Seventh Circuit denied Defendant's petition for interlocutory review. *Compare Johnson*, ECF No. 122 (order certifying the class), *with id.*, ECF No. 151 (notice of class action settlement). Moreover, before the parties agreed to resolve this case, they conducted significant discovery, including depositions and Defendant's production of over 20,000 pages of documents. *See id.*, ECF No. 167-1, ¶ 43. As well, for much of this case the parties provided a monthly report to Judge Dinsmore, and participated in a monthly telephone conference with Judge

Dinsmore, regarding the status of discovery. *See id.*, ¶ 44. Finally, dueling summary judgment motions were pending at the time the settlement was reached. *See id.*, ECF Nos. 135; 136.

**II. Distribution of notice satisfied due process requirements.**

Rule 23 requires "that class members must receive 'the best notice practicable under the circumstances[.]'" *Burns v. Elrod*, 757 F.2d 151, 154 (7th Cir. 1985). "But due process, in a class action, does not require actual notice." *Fontana v. Elrod*, No. 85 C 2424, 1986 WL 5193, at *3 (N.D. Ill. Apr. 28, 1986), *aff'd*, 826 F.2d 729 (7th Cir. 1987); *accord Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012) ("even in Rule 23(b)(3) class actions, due process does not require that class members actually receive notice") (collecting cases).

Distribution of notice here far exceeded this minimum standard. In particular, Rust used all reasonable efforts to provide direct mail notice to each member of the class. *See generally Johnson*, ECF No. 173-1. As a result, 89% of class members received individual direct mail notice, including a detachable claim form. *Id.*, ¶ 8. And the resulting claims rate of approximately 5.8% compares favorably with claims rates in other finally approved TCPA class action settlements. *See, e.g.*, *Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 WL 1744342, at *5 (N.D. Cal. Apr. 15, 2015) (claims rate of 1.9% for monetary portion of settlement, and 1.1% for injunctive relief portion of settlement); *Wilkins*, 2015 WL 890566, at *3 ("3.16% of the class[] filed a timely claim"); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) (approving TCPA class action settlement with 2.5% claims rate); *Michel v. WM Healthcare Solutions, Inc.*, No. 1:10-CV-638, 2014 WL 497031, at *4 (S.D. Ohio Feb. 7, 2014) ("a total response rate of 3.6%"); *Arthur v. SLM Corp.*, No. C10–0198 JLR, ECF No. 249 at 2-3 (W.D. Wash. Aug. 8, 2012) (claims rate of approximately 2%); *Grannan v. Alliant Law Grp., P.C.*, No. C10-02803 HRL, 2012 WL 216522, at *3 (N.D. Cal. Jan. 24, 2012) (claims rate under 3%).

## Conclusion

Participating class members stand to receive over $500 from the settlement, which is an exceptional result by any measure. Plaintiffs, and class counsel, firmly believe the settlement—which requires Defendant to pay $19,744,650 into an all-cash, non-reversionary fund—therefore constitutes an excellent result for the class members. And for the foregoing reasons, they respectfully request that this Court finally approve the settlement, and enter a final judgment and order in the form submitted by the parties.

Date: June 26, 2017                         GREENWALD DAVIDSON RADBIL PLLC

                                            /s/ Aaron D. Radbil
                                            Aaron D. Radbil
                                            106 East Sixth Street, Suite 913
                                            Austin, Texas 78701
                                            Phone: (512) 322-3912
                                            Fax: (561) 961-5684
                                            aradbil@gdrlawfirm.com

                                            Michael L. Greenwald
                                            James L. Davidson
                                            Jesse S. Johnson (*pro hac vice*)
                                            5550 Glades Road, Suite 500
                                            Boca Raton, Florida 33431
                                            Phone: (561) 826-5477
                                            Fax: (561) 961-5684
                                            mgreenwald@gdrlawfirm.com
                                            jdavidson@gdrlawfirm.com
                                            jjohnson@gdrlawfirm.com

                                            Class counsel

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed electronically on June 26, 2017, via the Court Clerk's CM/ECF system, which will provide notice to all counsel of record.

                                            /s/ Aaron D. Radbil
                                            Aaron D. Radbil